# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>ARNOL AGUINO-RAMOS, )<br>ALEXANDER OLIVERO-ORTIZ, and )<br>DIEGO AGUINO-RAMOS, )<br>)<br>Defendants. ) | Criminal Action No. 19-00108-KD-MU |

## ORDER

This action is before the Court on Defendant Arnol Aguino-Ramos' Motion to Suppress Evidence and for Dismissal of the Indictment and Exhibits which has been joined by Co-Defendants Alexander Olivero-Ortiz and Diego Aguino-Ramos (docs. 53-56, 60),[1] and the response and exhibits filed by the United States (doc. 61).

The motion was heard July 17, 2019. Defendants and their respective counsel, Federal Defender Carlos Williams, Ashley Cameron, and Neil Hanley; and Assistant United States Attorney George May, were present for the hearing. Upon consideration of the motion, response and testimony, and for reasons <u>more fully set forth</u> on the record, the Motions are DENIED, as follows:

A. <u>Defendant's motion to suppress statements made during the initial questioning by Coast Guard Officers on board the target vessel</u>.

Defendant moves to suppress his statement that he and the co-defendants were paid to transport marijuana from Columbia to Peru, on basis that the statement was made after the Coast Guard interdicted and boarded the vessel at gun-point, arrested the crew, and then questioned

---

[1] Defendant filed a Supplemental Memorandum in Support of the Motion to Dismiss (doc. 62).

without advice of the rights under Miranda and the Fifth Amendment.

Upon consideration, the motion is denied. Applying the factors for a custodial interrogation and the "reasonable man" standard, the Court finds that the United States' evidence and testimony weighs in favor of denying the motion to suppress these statements. United States v. Jonas, 639 F. 2d 200, 203-204 (5th Cir. Unit B, Mar. 9, 1981) ("In determining whether an interrogation occurred in a custodial context, thus requiring a Miranda warning, this Court employs a four-factor test: (1) whether probable cause to arrest had arisen; (2) whether the officer intended to hold the defendant; (3) whether the defendant believed that his freedom was significantly restricted; and (4) whether the investigation focused on the defendant."); United States v. Phillips, 812 F.2d 1355, 1359–1360 (11th Cir. 1987) ("The Court has also expressly adopted an objective, reasonable man standard as the appropriate test in cases involving custody issues[.]").

Specifically, the testimony and evidence presented by the United States establish a routine boarding which does not rise to the level of a custodial detention.[2] Therefore, Miranda warnings were not required before questioning could occur. See United States v. Rioseco, 845 F.2d 299, 303 (11th Cir. 1988) ("The mere fact that Coast Guard officers were armed and that Jesuchristo personnel were gathered in one specific area of the boat during the routine search of the boat subsequent to boarding could not lead a reasonable man to believe that he was in custody.").

B. <u>Defendant's motion to suppress statements made during the interview with Homeland</u>

---

[2] The credible testimony of the Coast Guard Officer established that although weapons were initially drawn at boarding, the weapons were re-holstered within approximately two minutes. Additionally, the initial questioning was focused on establishing the master of the vessel and the nationality of the vessel, and not on the Defendant.

2

Security Investigation agents at Port Everglades, Florida.

Defendant asserts that the interview was inherently coercive due to the length of time aboard the Coast Guard vessels, the shackling on deck, exposure to the elements, and overall care which falls below the standard of decency, and therefore, the statements made at the interview should be suppressed as involuntarily.

Defendants were arrested and read their Miranda rights soon after they arrived at port on April 16, 2019. A period of thirty-two days had passed since their detention on March 15, 2019, and during this time they were housed and fed on a tented deck or in the hangar of the U.S.C.G. Cutter Bear or the U.S.S. Tornado.

Title 18 U.S.C. § 3501(c) provides that a confession by a defendant while under arrest or in custody "shall not be inadmissible solely because of delay in bringing such person before a magistrate judge" if the confession or statement has "been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made . . . within six hours immediately following his arrest or other detention". Id. However, the statute also provides that the "time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate judge . . . beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge[.]" Id.

As to the first element, the credible testimony and evidence establish that Defendants' detention and care aboard the Bear and the U.S.S. Tornado was not inherently coercive and did not render their statements involuntary and inadmissible. The Court considered the totality of the circumstances, including the length of detention, the education and intelligence of the Defendants, the advice of constitutional rights, and whether the questioning was prolonged.

The Coast Guard Officer testified that in the best-case scenario, 22 days were necessary to travel the 1,800 nautical miles from the Eastern Pacific to Port Everglades, Florida. In this case, the Bear required approximately 4 days at sea and in port at Panama to arrange the return of an injured crewmember to the United States, re-provision the ship, dispose of oil wastes, as well as transfer the Defendants to the U.S.S. Tornado and then pick them up. Also, additional days at sea and in port were necessary to make a previously scheduled fuel stop in Ecuador. After leaving Ecuador, approximately 3-4 days were necessary to deliver four Costa Rican detainees, received from the U.S.S. Tornado, to Costa Rica, and pick up other detainees, before sailing to Port Everglades. The testimony indicated that a planned air transfer from Panama to Fort Lauderdale which was initially scheduled for April 10, 2019 was cancelled.

In addition, the Court finds the treatment of the Defendants to have been humane and adequate under the circumstances. The Defendants were periodically checked by medical personnel, fed the same meals as the crew, provided shelter and bedding, and allowed bathroom and exercise breaks from their shackles. The Court also finds that the shackles were on a 20-foot lead wire allowing for movement.

The Court finds that the circumstances were not coercive. But even if the 32 days could be considered a coercive situation, no statements were taken during this time. Rather, only after arriving in port was an interview conducted.

In Culombe v. Connecticut, 367 U.S. 568, 81 S. Ct. 1860 (1961), the Supreme Court explained that

> The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically

> impaired, the use of his confession offends due process. [ ] The line of distinction
> is that at which governing self-direction is lost and compulsion, of whatever
> nature or however infused, propels or helps to propel the confession.

367 U.S. at 602-603, 81 S. Ct. at 1879 (internal citation and footnote omitted).

On April 16, 2019, at Port Everglades, Defendants were fed before they were taken off the vessel and to the interview with HSI officials. Once there, they were given the Miranda warnings. Defendants' overall education levels were not high. However, the lack of education was addressed by the line-by-line advisement of rights and explanation of those rights by a Spanish-speaking person. Further, the actual questioning at Port Everglades was not prolonged. Therefore, under the totality of the circumstances, even with the 32 days at sea, Defendants' statements were voluntary and not the result of loss of the capacity for self-determination.

The delay in presentation to the Magistrate Judge the next day, April 17, 2019, was reasonable considering the means of transportation, specifically a vessel on the high seas, and the 1,800 nautical miles to travel to the Magistrate Judge in Fort Lauderdale. As explained at the hearing, the Defendants were transported over the ocean not by land. See United States v. Castillo, 899 F.3d 1208, 1218 (2018), cert. denied, - - - U.S. - - -, 139 S. Ct. 796 (2019) (concurring opinion) (finding that a 19-day delay was reasonable considering the approximately 1,000 miles from the Pacific Coast of Guatemala to the port of Miami with the added delay for the Guatemalan government to waive jurisdiction and that the defendant was presented to a Magistrate Judge the day after his arrival in the United States.") Accordingly, the motion to suppress is denied.

C. Defendant's motion to dismiss for failure to produce Defendant before a Magistrate Judge within a reasonable period of time.

Defendant cites to Rule 5 of the Federal Rules of Criminal Procedure in support of his

argument that the United States engages in an unconstitutional[3] deliberate practice of not promptly bringing defendants before a Magistrate Judge. In relevant part, Rule 5(a)(1)(B) provides that a "person making an arrest outside the United States must take the defendant without unnecessary delay before a magistrate judge, unless a statute provides otherwise."

Upon consideration of the evidence establishing the events between March 15, 2019, when Defendant was initially detained and April 17, 2019, when he appeared before a Magistrate Judge in Fort Lauderdale, Florida, the Court finds that the delay in presentment was not the result of unnecessary delay. Therefore, the motion is denied. Additionally, the Court finds that the delay was "reasonable considering the means of transportation and the distance to be traveled to the nearest available" Magistrate Judge. 18 U.S.C. § 3501(c).

D. Defendant's motion to dismiss for lack of jurisdiction[4] on basis that the target vessel was not a "covered vessel" under the Maritime Drug Law Enforcement Act.

Defendant argues that the indictment should be dismissed because the vessel was not a "covered vessel" and therefore, not subject to the jurisdiction of the United States. Pursuant to 46 U.S.C. § 70502(c)(1)(A), a "covered vessel" is a "vessel subject to the jurisdiction of the United States" including a "[v]essel without nationality". A "vessel without nationality" includes a "vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." Id. at § 70502(d)(1)(C).

---

[3] Defendant argues that his rights under the Fourth, Fifth and Sixth Amendments were violated.

[4] "(a) Jurisdiction. Jurisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense. Jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C. § 70504(a).

The United States' evidence and testimony establish that the Defendant claimed[5] that the vessel's home port was in Columbia, but Columbian officials did not provide an unequivocal affirmation of that claim. Instead, the evidence shows that Columbian officials would neither confirm nor deny the registry. Thus, the Court find that the United States has carried its burden to establish that the vessel was subject to the jurisdiction of the United States. United States v. Iguaran, 821 F.3d 1335, 1337–1338 (11th Cir. 2016) (Finding that upon *sua sponte* remand, the "district court should then determine whether the government has carried its burden of establishing that the vessel in which Iguaran was apprehended was subject to the jurisdiction of the United States."). Therefore, the motion to dismiss for lack of jurisdiction is denied.

E. <u>Defendant's motion to dismiss for lack of jurisdiction on basis that the target vessel was not outside the territorial waters of a foreign nation</u>.

Defendant argues that unless the United States proves that the vessel was outside the territorial waters of a foreign nation, the indictment must be dismissed with prejudice. In United States v. McPhee, 336 F.3d 1269, 1273 (11th Cir. 2003), the Eleventh Circuit held that the "United States generally recognizes the territorial seas of foreign nations up to twelve nautical miles adjacent to recognized foreign coasts." (citations omitted). More recently in United States v. Ruiz-Murillo, 2017 WL 1022807, at *8 (S.D. Ala. Mar. 16, 2017), aff'd, 736 Fed. Appx. 812 (11th Cir. 2018), the district court took "judicial notice that all of the listed sets of coordinates define locations that are far more than 12 miles beyond the coast of Colombia and therefore lie in international waters, as a matter of law." The credible testimony and evidence presented by the

---

[5] "(e) Claim of nationality or registry. A claim of nationality or registry under this section includes . . . (3) a verbal claim of nationality or registry by the master or individual in charge of the vessel." 46 U.S.C. § 70502(e).

United States establish that the vessel was interdicted approximately 95 to 100 nautical miles off the coast of Ecuador. The vessel was outside the territorial waters and thus, the United States has jurisdiction to proceed. Accordingly, the motion to dismiss is denied.

F. *Defendant's motion to dismiss for lack of jurisdiction due to lack of evidence of a nexus with the United States*.

Defendant acknowledged the Eleventh Circuit's decision that lack of a nexus is not a ground for dismissal of an indictment. United States v. Cruickshank, 837 F.3d 1182, 1187-88 (11th Cir. 2016) ("As we explained, a criminal act does not need a nexus to the United States in order to be criminalized under the MDLEA 'because universal and protective principles support its extraterritorial reach.'") (quoting United States v. Campbell, 743 F. 3d 802, 805 (11th Cir. 2014)); see also United States v. Valois, 915 F.3d 717, 722 (11th Cir. 2019) ("The defendants' MDLEA convictions do not violate their due process rights even if the offenses lack a nexus to the United States.") (citing Campbell, 743 F.3d at 812). Accordingly, the motion to dismiss is denied.

G. *Defendant's motion to dismiss for lack of notice that his conduct violated the laws of the United States.*

Defendant acknowledged that Eleventh Circuit precedent foreclosed this argument. In United States v. Cruickshank, the Eleventh Circuit explained that the "'Due Process Clause of the Fifth Amendment does not prohibit the trial and conviction of an alien captured on the high seas while drug trafficking.' . . . In our view, the MDLEA 'provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas.'" 837 F.3d at 1188. Also, in United States v. Valois, the Eleventh Circuit explained that "[a]s to the defendants' second contention, in United States v. Rendon, we held that the Due Process Clause

of the Fifth Amendment does not prohibit the trial and conviction of aliens captured on the high seas while drug trafficking because the MDLEA provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas." 915 F.3d at 722 (citing United States v. Rendon, 354 F.3d 1320, 1326 (11th Cir. 2003)). Accordingly, the motion to dismiss is denied.

**DONE** and **ORDERED** this 23rd day of July 2019.

s / Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**